Mitchell, J.
The prisoner and La Bock had, a short time prior to the fatal affray, quarreled with Brereton, the deceased, and another Brereton, who were driving cattle • along the road, and had been discomfited; they, or one of them, probably received some very severe blows ; they still continued, after this, walking near the Breretons, interfering with them and keeping up the quarrel; they also used language which indicated a design to kill the Breretons. Still it was a question for the jury, whether the words were used according to their ordinary import, or were the expressions of men accustomed to the use of language much more severe than they intended to carry out, or even whether it was the comparatively unmeaning and intemperate language of intoxicated men. A witness was accordingly asked whether, from the prisoner’s conduct and deportment, and' other facts connected with them, he was (in the judgment of the witness) to any considerable extent under the influence of intoxicating liquors. Objection was taken, that it was not competent for the witness to state his opinion; the question was on this account excluded, and the defendant excepted. Still the witness did testify to facts tending to *565 show that the prisoner was probably intoxicated. The materiality of the condition of the prisoner was not disputed by the judge, although it now is by the counsel for the people; and he contends that the prisoner can never show intoxication, in defence or excuse; that intoxication is only an aggravation of the offence.
For one to drink, that he may drown his conscience and the better nerve himself to commit a crime, is to aggravate his offence; but if one has lost his senses, and become insane, he has ceased to be accountable to the criminal law, whether the loss of intellect was caused by misfortune or his own imprudence in the use of intoxicating liquors, or by any willful act of his own. The loss of intellect takes away the faculty of possessing that “design” which is an essential part of the offence of murder. So if any other condition of the man deprives him of the power of knowing what he does, or of entertaining a design in acting, he cannot commit any offence of which design is an essential. If he willfully brought himself into that condition, he may be morally accountable for all his acts while thus degraded; but to make him liable to the criminal law, his offence must be brought within the definition of that law.
The question, whether the prisoner was intoxicated was also, material, that the jury might judge (as before stated) whether the threats used were the deliberate words of sober and bad men, or the idle and coarse language of drunken men; accordingly, the facts to show intoxication were received, not in this instance alone, but other witnesses also testified to them. Seth Keyes said, “ They appeared to be intoxicated.” Osborn Hanford said, “ I should think Eastwood had been drinking at the time, but I did not see him stagger.” The prosecutor, on the other hand, had, before this, proved that before either affray Eastwood and La Eock - had rudely interfered with other travelers, thus tending to exhibit them as ready for a row or a fight, and the first to provoke it. He showed that Eastwood took hold of the *566 horse’s bits of a traveler, and shoved the horse of an old man off the track, claiming the track for himself; that he next had talk with men passing in a wagon ; and after that, had the first affray with the Breretons. The jury might believe this, if done by sober men, showed a deliberate design to do every kind of bodily harm, but if done by intoxicated men, might consider it merely a temporary excitement, without such design.
The objection was accordingly to the form of the question, as if it sought the witness’s opinion. If the opinion of the witness had been asked as to facts, not within his own observation, the objection would have been good ; as to such facts, opinions can be given generally only as to matters of science or art, and by men of the particular science or art. The court of oyer and terminer were probably misled by the form in which the question was put. The inquiry was not intended to bring out an opinion, but to lead the witness to answer to a fact which he saw. If the- question had been (as it might have been) direct, “What was the condition of the prisoner as to sobriety at that time?” it probably would have been answered (as it had been before, by other witnesses) without objection. It did not become incompetent by adding the words, “ in your judgment,” while the judgment was restricted to what the witness saw. A child six years old may answer whether a man (whom it has seen) was drunk or sober; it does not require science or opinion to answer the question, but observation merely; but the child could not, probably, describe the conduct of the man, so that, -from its description,' others could decide the question. Whether a person is drunk or sober, or how far he was affected by intoxication, is better determined by the direct answer of those who have seen him than by their description of his conduct. Many persons cannot describe particulars; if their testimony were excluded, great injustice would frequently ensue. . The parties who rely on their testimony will still suffer an incon *567 venience, for the court and the juiy are always most impressed by those witnesses who can draw and act a living picture before them of what they have seen, so that if there is any controversy as to the fact, such witnesses control; if there is no controversy as to it, the general testimony answers all useful purposes. The supreme court was right in granting a new trial on this ground; and the judgment and order granting such new trial should be affirmed.
Judgment accordingly.